IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA,

     v.                                    Criminal Action No. 4:22cr97 (EWH)

RODRICK FOSTER MCLEAL, *et al.*,

     Defendants.

## **MEMORANDUM ORDER**

This matter is before the Court on Defendants' Motion to Dismiss the Indictment on Jurisdictional and Constitutional Grounds ("Motion to Dismiss"). ECF No. 127. The motion challenges the applicability and constitutionality of the Maritime Drug Law Enforcement Act ("MDLEA" or "Act"). After careful review of the briefing by the parties, Defendants' Motion to Dismiss is DENIED.[1]

## I.     BACKGROUND

Unless otherwise noted, the facts recited below come from State Department Certification of Commander Ian M. Starr ("Starr certification") certifying the apprehension of the vessel in this matter. Certification for the MDLEA Case Involving Unknown Go-Fast Vessel FDIN 2022807935 ("Starr Decl."), ECF No 168-1.

On November 21, 2022, United States law enforcement personnel detected a "go-fast vessel" outside the territorial waters of any country. *Id.* ¶ 4. Law enforcement personnel observed

---

[1]     In advance of the Court's first hearing on the Motion to Dismiss, Defendants filed a Motion to take Judicial Notice of the flag of Costa Rica. At the hearing on July 25, 2023, the Court admitted into evidence an exhibit depicting the flag of Costa Rica. *See* ECF No. 168-2. Accordingly, the Motion to take Judicial Notice, ECF No. 149, is DENIED AS MOOT.

multiple fuel drums and packages visible on deck. *Id.* They suspected that the vessel was engaged in drug trafficking and sought to intercept the boat. *Id.* Law enforcement personnel then observed individuals throwing packages overboard. *Id.* After the go-fast operator failed to stop, law enforcement personnel disabled and then boarded the vessel. *Id.*

The master of the ship made a verbal claim of Costa Rican nationality for the vessel. *Id.* According to the Starr certification, the vessel "displayed no indicia of nationality" and "law enforcement officials discovered no additional evidence of vessel nationality or registry to corroborate or contradict the master's verbal claim." *Id.* ¶¶ 4, 7. Defendants disagree with the Starr certification's description of the vessel, asserting that each side of the vessel displayed a depiction of the Costa Rican flag. Photographs of the Vessel, ECF No. 168-2. The Court admitted several photographs of the vessel into evidence, one of which is included below:



*Id.*

Law enforcement personnel then contacted a representative of the government of Costa Rica inquiring if Costa Rica could "confirm or deny the vessel's registry." Starr Decl. ¶ 5, ECF No. 168-1. Costa Rica's representative responded that "it could neither confirm nor deny the vessel's registry or nationality." *Id.* ¶ 6. Law enforcement proceeded to recover approximately 5,626 pounds of marijuana from the vessel. *Id.* ¶ 9.

The nine individuals on the vessel were taken into United States Coast Guard custody and subsequently charged via a complaint with Manufacture, Distribution or Possession with Intent to Distribute a Controlled Substance on a Vessel. *See* Criminal Compl., ECF No. 1; Aff. in Supp. of Criminal Compl. ¶ 6, ECF No. 2. The Defendants are Rodrick Foster McLeal, Edgar Perez-Samudio, Danilo Tucre, Atdil Chavez, Sjurden Gutierrez, Yureeth Blake, Sadan Elijah Prudo-Martin, Herman Floras, and Adrick Castillo.

## II.    PROCEDURAL HISTORY

The Grand Jury returned a one-count indictment against all Defendants charging Possession with the Intent to Distribute Marijuana on Board a Vessel in violation of 46 U.S.C. § 70503. ECF No. 43. Defendant McLeal moved to dismiss the Indictment. ECF No. 127. The other Defendants adopted and joined Defendant McLeal's motion.[2]

On February 24, 2023, the Court held a hearing on the Motion to Dismiss. ECF No. 150. At the conclusion of that hearing, the Court ordered supplemental briefing. Defendants submitted a supplemental memorandum. Suppl. Mem. in Supp., ECF No. 158. The Government filed a supplemental response, and Defendants replied. Suppl. Resp. in Opp'n, ECF No. 164; Suppl.

---

[2]    Defendants Blake, Castillo, and Prudo-Martin filed motions to adopt and join the supplemental filings of Defendant McLeal. ECF Nos. 159, 160, 161, 166. All other Defendants moved to adopt the supplemental filings orally at the July 25, 2023, hearing. As stated at the hearing, those motions are GRANTED.

Reply, ECF No. 165. As clarified by this subsequent briefing, Defendants raise five core challenges:

> (1) by its plain text, the MDLEA . . . do[es] not apply in this case because the vessel's master made a verbal claim of nationality;

> (2) . . . the vessel cannot qualify as a "vessel without nationality" under any of the definitions in § 70502(d) because the flag of Costa Rica was prominently displayed claiming foreign nationality;

> (3) the "jurisdiction" provision of the MDLEA (46 U.S.C. § 70504(a)) is unconstitutional if interpreted to govern the "covered vessel" inquiry because jurisdiction is an element of the offense that must be found by a jury . . . ;

> (4) . . . the certification of the Secretary of State cannot serve as conclusive proof that the vessel in fact qualifies as a "vessel without nationality"; and

> (5) the MDLEA and § 70502(d)(1)(C)—the provision identified by the government as the basis for the United States' jurisdiction over the offense—are unconstitutional because Congress exceeded the scope of its authority under Article I, § 8, Cl. 10 when it enacted the relevant provisions and because there is no nexus between the alleged conduct and the United States.

Suppl. Reply at 1, ECF No. 165.

On July 25, 2023, the Court held a second hearing on the Motion to Dismiss. ECF No. 168. At that hearing, the Court first heard argument on whether jurisdiction under the MDLEA is an essential element of the offense such that a determination of that issue must be submitted to a jury. The Court ruled that jurisdiction is not an essential element and could be decided by the Court as a preliminary matter. The Court then received evidence regarding whether the Defendants' vessel is subject to the jurisdiction of the United States pursuant to the MDLEA's jurisdictional provision. The Government offered into evidence the Starr certification. ECF No. 168-1. The Defendants offered into evidence an image of the Costa Rican flag, photographs of the vessel, and the Preamble to the United Nations Convention on the Law of the Sea. ECF No. 168-2. The Court admitted these documents.

After hearing additional argument on the constitutional and statutory interpretation issues raised by the Defendants, the Court took the parties' arguments under advisement, with this written opinion to follow.

## III.      LEGAL STANDARD AND STATUTORY FRAMEWORK

### A. Motion to Dismiss

Rule 12 of the Federal Rules of Criminal Procedure provides that defendants "may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). This includes seeking to dismiss a defective indictment. Fed. R. Crim. P. 12(b)(3)(B). An indictment is defective if it fails to state an offense, Fed. R. Crim. P. 12(b)(3)(B)(v), or "if it alleges a violation of an unconstitutional statute," *United States v. Brown*, 715 F. Supp. 2d 688, 689 (E.D. Va. 2010) (citing *In re Civil Rights Cases*, 109 U.S. 3, 8–9 (1883)). However, a district court may not dismiss an indictment "on a determination of facts that should have been determined at trial." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)). For this reason, while it is appropriate for the court to address "purely legal" statutory interpretation or constitutional law challenges in a motion to dismiss, the district court should not decide as-applied constitutional challenges when those challenges are based on facts not properly before the court. *See United States v. Hill*, 700 F. App'x 235, 237 (4th Cir. 2017).

### B. Maritime Drug Law Enforcement Act

The MDLEA prohibits possession of a controlled substance with the intent to distribute while on board a "covered vessel." 46 U.S.C. § 70503(a)(1). The term "covered vessel" is defined broadly and includes "a vessel of the United States or a vessel subject to the jurisdiction of the United States." *Id.* § 70503(e). Among the types of vessels listed as subject to the jurisdiction of

the United States are "a vessel without nationality" and "a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." *Id.* § 70502(c)(1)(A), (C).

Here, the United States alleges that the Defendants' vessel is subject to the jurisdiction of the United States because it is a vessel without nationality. A vessel without nationality is defined in relevant part as follows:

> (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> . . .
>
> (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality . . .

*Id.* § 70502(d)(1)(A), (C).

> A "claim of nationality or registry" for the vessel must be made one of three ways:
>
> (1) possession on board the vessel and production of documents evidencing the vessel's nationality as provided in article 5 of the 1958 Convention on the High Seas;
>
> (2) flying its nation's ensign or flag; or
>
> (3) a verbal claim of nationality or registry by the master or individual in charge of the vessel.

*Id.* § 70502(e).

Finally, the MDLEA explicitly states that the "jurisdiction of the United States with respect to a vessel subject to [the MDLEA] is not an element of an offense" and that "[j]urisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge" (the "Jurisdictional Inquiry"). *Id.* § 70504(a). To satisfy the Jurisdictional Inquiry, the Government must prove by a preponderance of the evidence that the Defendants were aboard a

6

vessel covered under the MDLEA. *See United States v. Matos-Luchi*, 627 F.3d 1, 5 (1st Cir. 2010). If the Government fails to meet this burden, the proper disposition is dismissal of the indictment. *See United States v. Prado*, 933 F.3d 121, 153–54 (2d Cir. 2019).

## IV.   DISCUSSION

The Court addresses Defendants' challenges to the indictment as follows. First, the Court explains its ruling that the Jurisdictional Inquiry is not an essential element of the offense and that the delegation of this inquiry to the trial judge is constitutional. This is a facial challenge to the MDLEA and accordingly does not depend on further factual development. Second, the Court conducts the Jurisdiction Inquiry required by the MDLEA. This includes both assessing the evidence presented at the hearing on July 25, 2023, and addressing the parties' statutory interpretation arguments. Finding that the Government has met its burden to establish jurisdiction under the MDLEA, the Court addresses Defendants' additional constitutional challenges to the MDLEA, specifically that, as applied to the facts of this case, the MDLEA's definition of what constitutes a vessel without nationality exceeds Congress's authority under the Define and Punish Clause, Article I, § 8, cl. 10, and that due process requires a nexus to the United States in MDLEA prosecutions.

### A. The Jurisdictional Inquiry is not an Essential Element

Defendants argue that the Jurisdictional Inquiry—i.e., the determination that a vessel is "subject to the jurisdiction of the United States" and thus is covered under the MDLEA—is an essential element of the offense and accordingly must be submitted to the jury and found beyond a reasonable doubt. Suppl. Mem. in Supp. at 18, ECF No. 158.

The identification of an essential element implicates two Constitutional rights. The first is the Sixth Amendment, which affords a defendant "the right to demand that a jury find him guilty

of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U.S. 506, 511 (1995). The second is found in the Due Process Clause of Fifth Amendment, which "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Because these are rights guaranteed by our Constitution, Congress may not "define away facts necessary to constitute a criminal offense." *Apprendi v. New Jersey*, 530 U.S. 466, 486 (2000).

In determining the elements of a crime, a court should begin with the statutory language as defined by Congress. *Liparota v. United States*, 471 U.S. 419, 424 (1985) ("The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute."). Nevertheless, "Congress cannot punish felonies generally." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 428 (1821). Instead, "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000).

The parties agree that Congress's authority to define substantive offenses under the MDLEA derives from the Define and Punish Clause of the Constitution. *See* Suppl. Mem. in Supp. at 18, ECF No. 158; Suppl. Resp. in Opp'n at 18, ECF No. 164. This clause grants Congress the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. Art. I, § 8, cl. 10. Defendants argue that the covered vessel inquiry is "the link to Congress' power to legislate . . . maritime felonies." Suppl. Mem. in Supp. at 18, ECF No. 158 ("In other words, the 'covered vessel' inquiry is part of the statute that ties the offense 'to one of Congress' constitutional powers . . . .'"). As a result, argue Defendants, the Jurisdictional Inquiry must be an essential element, submitted to the jury, and proven beyond

a reasonable doubt. *Id.* at 16.

Defendants are accurate that "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *Morrison*, 529 U.S. at 607. However, they are incorrect that a jurisdictional element is contemplated or necessary here. Jurisdictional elements appear in many criminal statutes such as criminal statutes based upon the Commerce Clause. *See United States v. Moran*, 70 F.4th 797, 802–03 (4th Cir. 2023). Such an element is necessary because the Commerce Clause does not expressly provide Congress the authority to proscribe criminal conduct, but instead grants it authority "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. Unlike the Commerce Clause, the Define and Punish Clause "directly grants Congress the authority to regulate certain, limited [criminal] conduct." *See Moran*, 70 F.4th at 802 (providing the Counterfeiting Clause and the Define and Punish Clause as examples of this grant of power). Thus, when proscribing conduct under the Define and Punish Clause, Congress may choose not to include a jurisdictional element and does not need to, so long as the criminal offense otherwise falls within the enumerated power. *Id.* at 802–03 (noting that Congress has authority to regulate criminal conduct under the Counterfeiting Clause and the Define and Punish Clause "*[b]ut otherwise*, Congress includes an element that 'connects the law to one of Congress's enumerated powers, thus establishing legislative authority.'" (emphasis added) (quoting *Torres v. Lynch*, 578 U.S. 452, 467 (2016))).

The conduct proscribed in the MDLEA otherwise falls within Congress's power under the Define and Punish Clause. As noted above, the MDLEA prohibits an individual from "possess[ing] with intent to manufacture or distribute, a controlled substance" while "on board a covered vessel." 46 U.S.C. § 70503(a)(1). This squarely falls within Congress's authority to define and punish

9

"[f]elonies committed on the high [s]eas."[3] U.S. Const. Art. I, § 8, cl. 10. The United States Court of Appeals for the Fourth Circuit has recognized the scope of the Define and Punish Clause in a similar context. In *United States v. Beyle*, defendants challenged their convictions under 18 U.S.C. § 1111, which criminalizes murder "[w]ithin the special maritime and territorial jurisdiction of the United States." 782 F.3d 159, 165 (4th Cir. 2015). The Fourth Circuit noted that "Congress has exercised this enumerated power to punish maritime crimes since the earliest days of the Republic" and that the statute fell "well within Congress's constitutionally granted power to punish felonies on the high seas." *Id.*

In addition to the Court's conclusion that Congress was not *required* to include a jurisdictional element under the MDLEA, the Court also concludes that no other basis exists to characterize the Jurisdictional Inquiry as an essential element. First, Congress did not intend for the Jurisdictional Inquiry to be an element of the offense. The MDLEA explicitly provides as much: "Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of an offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a). The Court must give full effect to the unambiguous language in the statute, and finds here the language is unambiguous. *See Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 128 (4th Cir. 2022) ("If the intent of Congress is clear, that is the end of the matter; for the court . . . must give effect to the unambiguously expressed intent of Congress.").

---

[3]     The Court notes that the application of the MDLEA to some defendants may still fall outside of the scope of Congress's authority under the Define and Punish Clause. *See, e.g.*, *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1258 (11th Cir. 2012) (finding the MDLEA unconstitutional as applied to defendants whose offense conduct occurred exclusively in the territorial waters of another nation).

Second, the Jurisdictional Inquiry does not meet any other definition of an essential element. There is no defined test for what constitutes an essential element of the offense; however, courts should consider whether there is a "tradition of treating those types of facts as something that must be proven to a jury beyond a reasonable doubt." *United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002) (citing *Harris v. United States*, 536 U.S. 545, 560 (2002); *Apprendi*, 530 U.S. at 476–85)). Here, the vessel's status under the MDLEA does not appear to go to any of the traditional elements of a criminal offense. *See id.* at 1108; *see also Elements of Crime*, *Black's Law Dictionary* (11th Ed. 2019) (defining the elements of a crime to "consist[] of the actus reus, mens rea, and causation"). The Jurisdictional Inquiry also does not implicate any other rule that would require it to be considered an essential element. *See Alleyne v. United States*, 570 U.S. 99, 103, 111–17 (2013) (holding any fact that increases mandatory minimum sentence of an offense is an essential element); *Apprendi*, 530 U.S. at 490 (holding any fact that increases statutory maximum sentence of an offense is an essential element).

The Courts of Appeals for the First Circuit and Eleventh Circuit agree that the Jurisdiction Inquiry is not an element of the offense. *See Tinoco*, 304 F.3d at 1109; *United States v. Mitchell-Hunter*, 663 F.3d 45, 51 (1st Cir. 2011). *But see United States v. Perlaza,* 439 F.3d 1149, 1163–67 (9th Cir. 2006) (finding that the Jurisdictional Inquiry must be treated as an element of the offense). Further, these courts note that the Jurisdictional Inquiry does not "have any bearing on the individual defendant, but instead is meant to bear only on the diplomatic relations between the United States and foreign governments." *Tinoco*, 304 F.3d at 1109; *see also Mitchell-Hunter*, 663 F.3d at 51 (describing the Jurisdictional Inquiry as "a matter of diplomatic comity"). The Fourth Circuit, in considering the MDLEA's predecessor statute,[4] reached a similar conclusion.

---

[4]      Marijuana on the High Seas Act of 1980, Pub. L. No. 96-350, 94 Stat. 1159 (1980)

*See United States v. Alomia-Riascos*, 825 F.2d 769, 771 (4th Cir. 1987). The Fourth Circuit explained that "Congress intended to exercise the maximum possible criminal jurisdiction" and that "under international law the United States could exercise criminal subject matter jurisdiction over foreign nationals for possession of large quantities of narcotics on foreign vessels upon the high seas." *Id*. As such, the jurisdictional provision was not an essential element of the offense but an act of "governmental consent," which is "simply a diplomatic requisite that must be met prior to seizure of the vessel." *Id*. (citing 21 U.S.C. § 955a(c) (1982)); *see also United States v. Howard-Arias*, 679 F.2d 363, 372 (4th Cir. 1982) ("Congress . . . had the power to take jurisdiction over all persons aboard a stateless vessel on the high seas for possession of a controlled substance with an intent to distribute it anywhere . . . ."). The Court finds this precedent persuasive.

Accordingly, the Court concludes that the Jurisdictional Inquiry under the MDLEA is not an essential element of the offense. Therefore, Congress's delegation of the Jurisdictional Inquiry to the trial judge is constitutional.

### B. The Government has Established that the Vessel is a Covered Vessel

Turning to the Jurisdictional Inquiry, the Government seeks to establish jurisdiction by demonstrating that the involved vessel is a "vessel without nationality." *See* 46 U.S.C. § 70502(c)(1)(A). Specifically, the Government alleges that the vessel is a vessel without nationality because the master of the vessel made a claim of Costa Rican "nationality" and Costa Rica did not affirmatively assert that the vessel was of its nationality. Suppl. Resp. in Opp'n at 3, ECF No. 164; *see id.* § 70502(d)(1)(C) (defining a "vessel without nationality" to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its

---

(previously codified at 21 U.S.C. §§ 955a-955d (1982)).

nationality").

Defendants raise three arguments: (1) the vessel does not qualify as a vessel without nationality because it displayed the flag of Costa Rica on its hull; (2) the Starr certification alone is insufficient to establish that the vessel is without nationality; and (3) accepting the Starr certification as true, the vessel does not qualify as a vessel without nationality because the master made a claim of nationality, not registry. Suppl. Mem. in Supp. at 9–16, 21–28, ECF No. 158. The Court will address each issue in turn.

1. Flying a Nation's Flag

Defendants submit that a depiction of the flag of Costa Rica was painted on the vessel. Photographs of the Vessel, ECF No. 168-2. They argue that the painted flag constitutes a claim of nationality under the MDLEA distinct from the master's verbal claim of nationality. Suppl. Mem. in Supp. at 15–16, ECF No. 158. And unlike the master's verbal claim, flying a flag is sufficient—without further inquiry—to establish the nationality of the vessel. *Id.* As such, argue Defendants, the vessel cannot be deemed as a "vessel without nationality" and is therefore not subject to the MDLEA.[5] *Id.* at 16. Having reviewed the context of the MDLEA, the Court concludes that the Defendants' suggested interpretation is inconsistent with the plain language and structure of the statute and would result in illogical outcomes.

First, the structure of section 70502—containing the MDLEA's definitions—counsels against Defendants' argument. As previously explained, a "vessel without nationality" is subject

---

[5]     The Court notes that it is disputed whether a flag painted on the vessel's hull is sufficient to constitute "flying [a] nation's ensign or flag" under subsection 70502(e)(2). *Compare United States v. Obando*, 891 F.3d 929, 933–38 (11th Cir. 2018) (finding a painted flag insufficient), *with Prado*, 933 F.3d at 131–32 (criticizing the district court's conclusion that a painted flag was insufficient). The Court need not reach the issue because even if the painted flag constituted a claim of nationality, as explained below, the Government still demonstrated the vessel was without nationality under the MDLEA.

to the Act. *See* 46 U.S.C. § 70502(c)(1)(A). The MDLEA defines a "vessel without nationality" to include "a vessel aboard which the master or individual in charge *makes a claim of registry* and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(C) (emphasis added). However, subsection 70502(d)—which defines "vessel without nationality"—does not indicate what constitutes "mak[ing] a claim of registry" under the MDLEA, nor does it limit claims of registry to only verbal claims. Instead, the next subsection, subsection 70502(e), states that a claim of registry or nationality must be made one of three ways: (1) the production of documents evidencing the vessel's nationality, (2) flying an ensign or flag, or (3) a verbal claim. *Id.* § 70502(e). Thus, subsection 70502(e)—the subsection upon which Defendants rely—cannot be interpreted as establishing an independent path to establishing jurisdiction, or a lack thereof. Rather, subsection 70502(e) establishes the various ways in which a claim of registry or nationality can be made: verbally, by flying a flag, or through production of documents. But the appropriate inquiry once that claim is made is subsection 70502(d), which generally requires that either (1) no claim of nationality or registry is made, *id.* § 70502(d)(1)(B), (D); or (2) a claim of nationality or registry is made, and the claimed nation denies the claim or does not affirmatively and unequivocally assert the vessel is of its nationality, *id.* § 70502(d)(1)(A), (C). Interpreting the MDLEA in this manner is logical and gives effect to all of the provisions of the Act.

Other circuit courts of appeals have applied the MDLEA consistent with this interpretation. For example, in *United States v. Alarcon Sanchez*, law enforcement observed a "small flag decal or painting near the engine" indicating Ecuadorian nationality. 972 F.3d 156, 163 (2nd Cir. 2020). The captain of the vessel also claimed Ecuadorian nationality. *Id.* Law enforcement officials then sought the verification of the Ecuadorian government pursuant to subsection 70502(d)(1). *Id.* The

Court of Appeals for the Second Circuit found that "[t]his comported with MDLEA statutory procedures" and that the Government satisfied its burden in proving that the vessel was "a vessel without nationality" under the Act. *Id.* at 163–64.

Finally, the Defendants' interpretation would lead to absurd results. Under Defendants' reading of section 70502, the act of flying a flag would operate as independent, conclusive proof of the vessel's nationality. It would foreclose jurisdiction under the MDLEA, regardless of whether the claimed nation denies registry or nationality or fails to affirmatively assert the vessel's nationality or registry. The interpretation would effectively allow any vessel to attach the flag of any country with impunity and provide no means for confirmation. Such an interpretation is not reflected by the text of the MDLEA and would lead to an illogical loophole in its implementation.[6]

### 2. Starr Certification

The MDLEA provides that the "response of a foreign nation to a claim of registry . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." 46 U.S.C. § 70502(d)(2). Defendants argue that the Starr certification only serves as conclusive proof of the foreign nation's response, not as conclusive proof that the vessel was without nationality. Suppl. Mem. in Supp. at 21–28, ECF No. 158. Thus, under the Defendants' interpretation, the Government would still need to establish the master's claim and "the information relayed to the foreign nation that prompted its response." *Id.* at 22. Defendants therefore requested "the opportunity to challenge at a hearing what is actually in the certificate." July 25, 2023, Hr'g Tr. at 25:9–13, ECF No. 170.

---

[6]     To the extent Defendants argue that the MDLEA's treatment of flying a flag as a basis for claiming nationality is contrary to international law, that argument is rejected as the Court finds that the Felonies Subclause is not constrained by international law. *See infra* Part IV.C.

The Court of Appeals for the Eleventh Circuit has considered this issue in depth. There, the Eleventh Circuit found it is improper to test the veracity of the certification absent a showing of bad faith by the defendant. *See United States v. Hernandez*, 864 F.3d 1292, 1300–02 (11th Cir. 2017). The court's holding flows from Congress's use of the term "conclusive." "The very concept of a conclusive proof entails not only that no detail or corroboration is needed, but also that any contrary evidence is futile." *Id.* at 1300. "Conclusive proof" is "[e]vidence so strong as to overbear any other evidence to the contrary." *Conclusive Proof, Black's Law Dictionary* (11th Ed. 2019). Requiring the Government to prove the veracity of the State Department certification in every case would effectively apply a different standard:

> If a document states a proposition, a party introduces evidence that contradicts or undermines the proposition, and a court thereby inquires whether the proposition is true, then the court treats the document at most as establishing a rebuttable presumption of the proposition's truth, but not as conclusively proving its truth.

*Hernandez*, 864 F.3d at 1300. Accordingly, the Eleventh Circuit found it is only appropriate to look behind the claims in the certification upon a showing of bad faith. *Id.* at 1300–02. Other courts have concluded that an evidentiary hearing is required when "the defendant made a sufficient threshold showing that material facts were in doubt or dispute." *Mitchell-Hunter*, 663 F.3d at 53 (internal quotation marks and citations omitted); *see also United States v. Taylor*, 13 F.3d 786, 789 (4th Cir. 1994) (applying same standard in a different pretrial context). Regardless, "the decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court." *Mitchell-Hunter*, 663 F.3d at 53 (quoting *United States v. Brown*, 621 F.3d 48, 57 (1st Cir. 2010)); *see also* Fed. R. Crim. P. 12(c) (noting that a district court "may" schedule a hearing to resolve a pretrial motion).

Defendants have not alleged bad faith. They do however question the accuracy of several statements in the Starr certification. Specifically, Defendants argue that statements that the "vessel

displayed no indicia of nationality" and that the "officials discovered no additional evidence of vessel nationality or registry" are incorrect because the vessel displayed the Costa Rican flag on its hull. Suppl. Mem. in Supp. at 25, ECF No. 158; Photographs of the Vessel, ECF No. 168-2. The Government disputes that the depiction on the vessel's hull is the Costa Rican flag. Suppl. Resp. in Opp'n at 6 n.1, ECF No. 164.

The Court does not need to resolve this dispute because it is not material to the Jurisdictional Inquiry. Given the facts of this case, the Jurisdictional Inquiry requires that (1) the master of the vessel made a claim of Costa Rican registry; and (2) law enforcement contacted the Government of Costa Rica who "could neither confirm nor deny the vessel's registry or nationality." Starr Decl. ¶¶ 4–6, ECF No. 168-1; *see also* 46 U.S.C. § 70502(d)(1)(C). As previously explained, a claim of registry may be made by flying Costa Rica's "ensign or flag" *or* a verbal claim of nationality or registry. 46 U.S.C. § 70502(e). Defendants do not dispute that the master of the vessel made a verbal claim of Costa Rican nationality or Costa Rica's response. These two facts are sufficient to establish that the vessel was without nationality, and it is unnecessary to determine whether the Costa Rican ensign or flag was flown. Accordingly, the Court finds that the Starr certification is sufficient to prove that the vessel was without nationality and denies Defendants' request for an evidentiary hearing.

The Court also rejects Defendants' arguments that the Starr certification violates the Confrontation Clause of the Constitution and is impermissible hearsay. Suppl. Mem. in Supp. 23–28, ECF No. 158. Defendants' Confrontation Clause argument is foreclosed by the Court's earlier ruling that the covered vessel inquiry can be decided by the Court as a preliminary matter. *See Mitchell-Hunter*, 663 F.3d at 51–52 (explaining that the Supreme Court has not expanded the Confrontation Clause beyond the context of trial). Defendants' hearsay argument similarly fails.

Fed. R. Evid. 1101(d) (excluding the rules of evidence in a preliminary examination in a criminal case); *see also In re Grand Jury Subpoena*, 884 F.2d 124, 127 (4th Cir. 1989); *cf. United States v. Angulo-Hernandez*, 565 F.3d 2, 11 (1st Cir. 2009) (finding the certification admissible under the hearsay exception for public records); *United States v. Cedeno-Cedeno*, No. 14-cr-3305, 2016 WL 4376845, at *6–8 (S.D. Cal. Aug. 17, 2016) (finding that the claimed nation's response constitutes a legally operative "verbal act," which is not hearsay). Accordingly, the Court finds the Starr certification admissible.[7]

### 3. Claim of "Registry" Versus Claim of "Nationality"

Defendants argue that, even accepting every fact contained in the Starr certification as true, the vessel does not meet the MDLEA's definition of a "vessel without nationality." Suppl. Mem. in Supp. at 5–15, ECF No. 158. The basis of their argument is that, as recited in the Starr certification, the master of the ship made a verbal claim of "nationality," whereas the MDLEA definition requires the individual to make a claim of "registry." *Id.* at 5–7; *see* 46 U.S.C. § 70502(d)(1)(C) (defining "vessel without nationality" to include "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality"). The Court concludes that, in the context of the MDLEA, the term "claim of registry" appearing in subsection 70502(d)(1)(C) includes a master claiming either nationality or registry. Accordingly,

---

[7]    The Defendants also argue that the Jurisdictional Inquiry's "conclusive proof" provision "contravenes separation of powers principles by taking away even the judge's ability to find the facts" and "violates the well-established Article III corollary that the parties to a suit cannot create jurisdiction." Suppl. Mem. in Supp. at 23, ECF No. 158. The Court finds these arguments unavailing. Defendants cite no authority regarding their separation of powers argument. Additionally, the Starr certification is not necessary to establish subject matter jurisdiction as district courts have original jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231; *see also Moran*, 70 F.4th at 802–03 (explaining that subject matter jurisdiction in criminal cases is grounded in 18 U.S.C. § 3231).

the vessel meets the MDLEA's definition of a "vessel without nationality."

The Court first notes that the terms "nationality" and "registry" are not interchangeable in formal maritime usage;[8] however, the MDLEA treats them as such. For example, in defining relevant terms, the MDLEA combines the two terms, providing one definition for "[c]laim of nationality or registry." 46 U.S.C. § 70502(e). The text of other relevant definitions further supports this construction. For example, a "vessel without nationality" is defined to include when "the master or individual in charge makes a claim of *registry* and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its *nationality*." *Id.* § 70502(d)(1)(C) (emphasis added). The rejection of the master's claim of registry is directly premised on the claimed country's failure to confirm nationality.

Accordingly, it is evident that while the formal usage of the two terms may differ, Congress used the term "claim of registry" in subsection 70502(d)(1)(C) to also encompass a "claim of nationality." This interpretation has been adopted by the Court of Appeals for the Eleventh Circuit, the only circuit court to address the issue.[9] *See United States v. Gruezo*, 66 F.4th 1284, 1291 (11th Cir. 2023) (finding the terms are used interchangeably). Additionally, such an interpretation is consistent with how courts approach MDLEA prosecutions. *See, e.g.*, *United States v. Alarcon Sanchez*, 972 F.3d 156, 163–64 (2d Cir. 2020) (upholding the district court's finding of jurisdiction

---

[8]     The "nationality" of a vessel is a broad term, referring to the country with which the vessel is connected. *United States v. Escalona-Reid*, No. 20-203, 2022 WL 17541746, at *2 (D.P.R. Dec. 8, 2022) (citing Herman Meyers, *The Nationality of Ships* 129–30 (1967)). "Registration" of the vessel is narrower, referring to the act of a government recording the nationality of the vessel. *Id.*

[9]     The panel opinion in *United States v. Dávila-Reyes* adopted the same construction as the Eleventh Circuit and provided a thorough analysis of the issue; however, that panel opinion was withdrawn and the Court of Appeals for the First Circuit sitting *en banc* resolved the matter on other grounds. *See United States v. Dávila-Reyes*, 23 F.4th 153, 165–69 (1st Cir. 2022), *opinion withdrawn, reh'g en banc*, 84 F.4th 400 (1st Cir. 2023).

where the master of the vessel made a verbal claim of "nationality" and the claimed nation failed to "affirmatively and unequivocally assert" that the vessel is of its nationality). For these reasons, the Court concludes that the Starr certification's assertion that the master made a verbal claim of Costa Rican nationality satisfies the MDLEA's requirement that the master make a claim of registry.

The Court likewise rejects Defendants' arguments that the rule of lenity, vagueness doctrine, or the international comity rule of construction compel a different outcome. Suppl. Mem. in Supp. at 12–15, ECF No. 158. The rule of lenity does not apply because the statute does not contain a grievous ambiguity or uncertainty after using normal tools of statutory interpretation. *See Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (stating that the rule of lenity "applies only when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended" (internal quotation marks and citations omitted)). The statute is not unconstitutionally vague because it provides "enough clarity that reasonable people can know what is required of them and judges can apply the law consistent with their limited office." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1233 (2018) (Gorsuch, J., concurring); *see also Johnson v. United States*, 576 U.S. 591, 595–96 (2015). Lastly, standard methods of statutory interpretation indicate Congress's clear purpose. Accordingly, the Court does not need to apply the international comity rule of construction. *See In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1047 (2d Cir. 1996) ("Because the principle of comity does not limit the legislature's power and is, in the final analysis, simply a rule of construction, it has no application where Congress has indicated otherwise." (citing *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382 (1959))).

* * *

Accordingly, after reviewing the evidence before the Court and the parties' arguments regarding the interpretation of the definitions section of the MDLEA, the Court finds that the Government has met its burden in establishing that the vessel upon which the Defendants were seized is a vessel without nationality and is therefore a "covered vessel."

### C. Congress did not Exceed its Authority Under the Define and Punish Clause

Next, Defendants argue that the MDLEA is unconstitutional as applied to the facts of this case because the MDLEA captures within its jurisdiction vessels that are not considered stateless under international law. Defendants argue that international law does not treat vessels as stateless whenever the claimed nation fails to "affirmatively and unequivocally assert that the vessel is of its nationality." Suppl. Mem. in Supp. at 29–33, ECF No. 158. Central to Defendants' argument is that "Congress'[s] power under the Define and Punish Clause to regulate offenses at sea, must be based on one of the widely-recognized principles of jurisdictional sovereignty derived from international law."[10] *Id.* at 30. The Court understands Congress's authority under the Define and Punish Clause not to be so limited.

The Define and Punish Clause contains three distinct grants of power: (1) the power to define and punish piracies ("Piracies Subclause"), (2) the power to define and punish felonies committed on the high seas ("Felonies Subclause"), and (3) the power to define and punish offenses against the law of nations ("Offences Subclause"). *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012) (citing *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59 (1820)); *see also United States v. Hasan*, 747 F. Supp. 2d 599, 603–04 (E.D. Va. 2010). The Offences Subclause is textually limited to offenses "against the law of nations," indicating

---

[10]     Defendants' argument is based primarily on the withdrawn panel opinion in *Dávila-Reyes*. *See Dávila-Reyes*, 23 F.4th at 169–95, *opinion withdrawn, reh'g en banc*, 84 F.4th 400.

that Congress's authority to legislate pursuant to that subclause is "limited to proscribing violations of 'customary international law.'" *United States v. Macias*, 654 F. App'x 458, 460 (11th Cir. 2016) (citing *Bellaizac-Hurtado*, 700 F.3d at 1249–58); U.S. Const. Art. I., § 8, cl. 10. However, unlike the Offences Subclause, the Felonies Subclause does not contain a similar textual limitation. U.S. Const. Art. I, § 8, cl. 10. While it was not discussing whether the Felonies Subclause is constrained by international law, the Fourth Circuit has recognized that the textual limitation of the subclause focuses on whether the offense occurred on the high seas. *See Beyle*, 782 F.3d at 165–66.

This distinction in Congress's authority is highlighted by an MDLEA challenge implicating the Offences Subclause decided by the Eleventh Circuit. In *United States v. Bellaizac-Hurtado*, all the defendants' conduct occurred within the territorial waters of Panama; however, the Republic of Panama ultimately consented to the United States prosecuting the defendants under the MDLEA. 700 F.3d at 1248. Because the defendants' conduct occurred in the territorial waters of Panama and not the high seas, Congress's authority to proscribe the defendants' conduct was derived from the Offences Subclause. *Id.* at 1248–49. The Eleventh Circuit explained that the Offences Subclause is limited by customary international law, and that because drug trafficking is not a violation of customary international law, Congress exceeded its authority in proscribing the defendants' conduct. *Id.* at 1249–58. However, outside of the Offences Subclause "Congress possesses additional constitutional authority to restrict conduct on the high seas, including the Piracies [Subclause]; the Felonies [Subclause]; and the admiralty power." *Id.* at 1257 (internal citations omitted). Accordingly, the *Bellaizac-Hurtado* court noted that the Eleventh Circuit has "always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause." *Id.* (internal citations omitted).

22

The Court agrees with this analysis. The three grants of power contained in the Define and Punish Clause are distinct. *See Hasan*, 747 F. Supp. 2d at 603–04. While the Offences Subclause is textually limited to offenses "against the laws of nations," the Felonies Subclause is not, and the Court declines to read in that limitation. *See Macias*, 654 F. App'x at 461 ("[U]nlike the Offences Clause, the Felonies Clause is not narrowed by the language 'against the Laws of Nations.'" (internal citation omitted)). Here, Defendants' vessel was seized on the high seas, a fact that Defendants do not dispute. Starr Decl. ¶ 4, ECF No 168-1; Suppl. Mem. in Supp at 4, ECF No. 158. Accordingly, Congress's authority to proscribe Defendants' conduct is derived from the Felonies Subclause, which is not constrained by international law. Because the Court finds that Congress's authority under the Felonies Clause is not bound by customary international law, it does not need to reach Defendants' arguments regarding the protective principle of international law. *See* Suppl. Mem. in Supp. at 33–45, ECF No. 158.

### D. Due Process

Lastly, the Defendants argue their prosecution under the MDLEA violates due process because their conduct lacked a nexus to the United States. Suppl. Mem. in Supp. at 45–48, ECF No. 158.

A statute that has extraterritorial reach must nonetheless "comport with due process." *United States v. Brehm*, 691 F.3d 547, 552 (4th Cir. 2012). While not adopting a nexus test for due process, the Fourth Circuit has recognized that "[s]ome courts have, as a proxy for due process, required 'a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair.'" *Id.* (citing *United States v. Davis*, 905 F.2d 245, 248–49 (9th Cir. 1990); *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003)); *see also id.* at 552 n.7 (explaining that the court did not need to decide whether nexus was required). Other circuit

courts of appeals have rejected imposing a nexus requirement on the MDLEA entirely. *See United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir. 1993); *United States v. Suerte*, 291 F.3d 366, 375 (5th Cir. 2002); *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2014).

However, even circuit courts of appeals that apply a nexus test do not require the Government to prove nexus in an MDLEA prosecution when the vessel is without nationality, or "stateless." *See Perlaza*, 439 F.3d at 1160–61 (explaining that "[i]f a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them" (alteration in original) (citation omitted)); *United States v. Van Der End*, 943 F.3d 98, 104–06 (2d Cir. 2019). "Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." *United States v. Caicedo*, 47 F.3d 370, 373 (9th Cir. 1995).

The Fourth Circuit has adopted similar reasoning and does not require nexus when a vessel is without nationality. In *United States v. Howard-Arias*, the Fourth Circuit confronted a double jeopardy challenge to the MDLEA's predecessor, the Marijuana on the High Seas Act. 679 F.2d at 367–72. The Marijuana on the High Seas Act criminalized two offenses: (1) possession with intent to distribute a controlled substance on board a vessel on the high seas, and (2) possession of a controlled substance with the intent or knowledge that it would be imported into the United States. *Id.* at 365 n.1 (citing 21 U.S.C. § 955a(a), (d) (1982)). The defendant—who was seized on a stateless vessel—argued that the two subsections criminalized the same conduct because due process demanded that a prosecution for the first offense required the government to demonstrate a "direct connection or 'nexus'" to the United States. *Id.* at 369. The Fourth Circuit found that a nexus was not required given the stateless status of the vessel. *See id.* at 371–72. The court

24

recognized that "[a] stateless vessel enjoys little, if any, protection from international law when sailing on the high seas." *Id.* at 371. Accordingly, "Congress . . . had the power to take jurisdiction over all persons aboard a stateless vessel on the high seas for possession of a controlled substance with an intent to distribute" regardless of where the defendant intended to distribute the substance. *Id.* at 372.

Accordingly, the Court finds that even if due process requires the Government to demonstrate a nexus to the United States, nexus is not required in this case because the Defendants' vessel was stateless.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss the Indictment on Jurisdictional and Constitutional Grounds, ECF No. 127, is DENIED.

It is SO ORDERED.

/s/

Elizabeth W. Hanes
United States District Judge

Newport News, Virginia
Date: November 15, 2023